UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DISTRIBUIDORA DE DISCOS KAREN C.
POR A.; KAREN PUBLISHING COMPANY,

               Plaintiffs,

               -v-

UNIVERSAL MUSIC GROUP, INC., d/b/a
UNIVERSAL MUSIC LATIN
ENTERTAINMENT, CAPITOL RECORDS
LLC d/b/a CAPITOL LATIN MUSIC, E.M.I.
MUSIC NETHERLANDS B.V., JUAN LUIS
GUERRA,

               Defendants.

13-CV-7706 (JPO)

OPINION AND ORDER

JUAN LUIS GUERRA, UNIVERSAL MUSICA,
INC., CAPITOL RECORDS LLC, UNIVERSAL
MUSIC GROUP, INC.,

               Counterclaimants/
               Third-Party Plaintiffs,

               -v-

DISTRIBUIDORA DE DISCOS KAREN C.
POR A., KAREN PUBLISHING COMPANY,

               Counter-Defendants,

               and

DISTRIBUIDORA DE DISCOS KAREN S.R.L.,
BIENVENIDO RODRIGUEZ,

               Third-Party Defendants.

J. PAUL OETKEN, District Judge:

       Plaintiffs Distribuidora De Discos Karen C. Por A. ("DDK") and Karen Publishing

Company ("Karen Publishing") initiated this action against Juan Luis Guerra, Universal Music

Group, Inc. doing business as Universal Music Latin Entertainment ("UMG"), Capital Records LLC doing business as Capitol Latin Music ("Capitol"), and E.M.I. Music Netherlands B.V. ("E.M.I."), alleging copyright infringement in connection with Plaintiffs' exclusive right to reproduce and distribute Guerra's musical compositions.  (Dkt. No. 1.)  Defendants Guerra, UMG, Capitol, and EMI filed a counterclaim against the Karen Plaintiffs (DDK and Karen Publishing) and a third-party complaint against Distribuidora de Discos Karen S.R.L. ("DDK S.R.L."; with the Karen Plaintiffs, "Karen") and Bienvenido Rodriguez ("Rodriguez").  (Dkt. No. 31.)  The Court also allowed Universal Musica, Inc. ("UMU") to intervene and file, with Guerra, a counterclaim against the Karen Plaintiffs and a third-party complaint against DDK S.R.L. and Rodriguez.  (Dkt. No. 30.)  Rodriguez, in turn, filed a third-party counterclaim against Guerra and UMU.  (Dkt. No. 56.)

There are three motions currently before the Court: first, a motion by Karen to file a supplemental pleading adding claims against Guerra and UMU (Dkt. No. 58); second, a motion to dismiss Rodriguez's third-party counterclaim filed by Guerra and UMU (Dkt. No. 67); and third, a motion for judgment on the pleadings as to UMU and Guerra's counterclaim filed by Karen and Rodriguez (Dkt. No. 63).  For the reasons that follow, the first and second motions are granted in part and denied in part, and the third motion is denied.

## I.    Background[1]

This gravamen of this action is a dispute between a composer (Guerra) and a publisher (Karen) over the ownership of the copyrights in a number of Latin pop songs.  Guerra is a composer, musician, and recording artist.  (Dkt. No. 59-1 ¶ 11.)  Starting in 1985, Guerra began to write musical compositions for distribution by DDK.  (*Id.* ¶ 12.)  In the following years,

---

[1]      The following facts are taken from the parties' pleadings and documents incorporated therein, and are presumed true for the purpose of these motions.

Guerra and DDK entered into a series of agreements governing the terms of their relationship. (*Id.* ¶ 13.)

In August 1988, Guerra entered into an exclusive recording agreement with DDK, in which he agreed to record albums for DDK and not re-record those songs until after the agreement expired.  (Dkt. No. 69-1 ("Base Agreement").)

In October 1992, Guerra entered into a publishing administration agreement with Karen Publishing.  (Dkt. No. 64-1 ("1992 Agreement").)  The 1992 Agreement gave Karen Publishing rights in forty-six of Guerra's compositions—the nature of this transfer of rights will be explained in greater detail below.  (Dkt. No. 59-1 ¶ 13; 1992 Agreement at 13.)  The parties amended the agreement in July 1994 to add an additional nine compositions to the 1992 Agreement, for a total of fifty-five compositions.  (Dkt. No. 59-1 ¶ 20.)

In October 2006, Guerra and DDK entered into an Agreement for the Partial Release of Obligations.  (Dkt. No. 64-10 ("Release Agreement").)  The Release Agreement freed Guerra from his obligation to record additional songs for DDK (*id.* ¶ FIRST), but in exchange required him to transfer various properties to DDK, including shares in a joint-stock corporation; the master recording of a live performance of a concert given by Guerra; real property owned in the Dominican Republic; and various suites in an office building (*id.* ¶ SIXTH).  The Release Agreement also permitted DDK to continue exploiting the recorded performances of Guerra's compositions made under the Base Agreement and prohibited Guerra from re-recording those compositions for five years, in exchange for royalties.  (*Id.* ¶¶ THIRD, FOURTH, FIFTH.)  DDK also retained the right to administer Guerra's compositions for three years.  (*Id.* ¶ SEVENTH.) Again, the specifics of the Release Agreement will be considered in greater detail below.

In 2014, Guerra entered into an Exclusive Administration Agreement with UMU, through which Guerra gave UMU the exclusive right to administer his compositions.  (Dkt. No. 69-5.)

DDK commenced this lawsuit in October 2013 against Guerra, UMG, Capitol, and E.M.I., alleging a single claim of copyright infringement based on the release of a CD and DVD, entitled "Asondeguerra Tour," which contained newly recorded versions of compositions that Guerra had recorded under the Base Agreement.  (Dkt. No. 1 ¶ 20.)  In July 2015, the Court granted a motion to lift a stay of proceedings and to allow UMU to intervene to assert counterclaims of copyright infringement against Karen.  (Dkt. No. 30.)  On April 21, 2016, Karen filed an amended answer to the counterclaims and, along with Rodriguez, a third-party counterclaim against Guerra and UMU.  (Dkt. No. 56.)

## II.    Legal Standard

Motions to amend and motions for judgment on the pleadings are considered under the same standard as a motion to dismiss for failure to state a claim.  *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("The adequacy of a proposed amended complaint to state a claim is to be judged by the same standards as those governing the adequacy of a filed pleading."); *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to [Rule] 12(b)(6) motions to dismiss applies to [Rule] 12(c) motions for judgment on the pleadings.").

In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead factual allegations sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss, courts must accept as true all "factual allegations contained in the complaint," *Twombly*, 550 U.S. at 572, and

must "draw all inferences in the light most favorable to the non-moving party's favor," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.).

### III.   Discussion

There are three motions currently before the Court.  First, the Karen Plaintiffs move to file a supplemental pleading asserting claims against Guerra and UMU.  (Dkt. No. 58.)  Second, Guerra and UMU move to dismiss Rodriguez's third-party counterclaim.  (Dkt. No. 67.)  And third, Karen and Rodriguez move for judgment on the pleadings against Guerra and UMU.  (Dkt. No. 63.)

### A.   Karen's Motion to File a Supplemental Pleading and Guerra's and UMU's Motion to Dismiss Rodriguez's Counterclaim

Two of the motions before the Court involve substantially similar claims: Karen's motion to file a supplemental pleading asserting claims against Guerra and UMU (Dkt. No. 58), and Guerra's and UMU's motion to dismiss Rodriguez's third-party counterclaim (Dkt. No. 67).

Karen's proposed supplemental pleading asserts three claims against UMU and Guerra: (1) for declaratory judgment that registrations obtained by Editora El Conuco Inc. (the "Conuco Registrations")[2] are invalid; (2) for declaratory judgment that the 2006 Release Agreement is unenforceable; and (3) for copyright infringement against UMU based on its May 2014 contract with Guerra to administer his compositions.  (Dkt. No. 59-1.)  These claims closely track the counterclaims raised by Rodriguez against Guerra and UMU, which are (1) for declaratory judgment that the Conuco registrations are invalid; (2) for a declaration that the Release Agreement is unenforceable; and (3) for a declaration that the Release Agreement did not

---

[2]   Karen and Rodriguez allege that Guerra was an officer or director of Editora El Conuco Inc. ("Conuco"), and that Guerra's brother was Conuco's registered agent.  Conuco was dissolved administratively in 1996.  (Dkt. No. 56 ¶¶ 20-21.)

transfer exclusive rights to Guerra, such that Guerra did not have exclusive rights to license to UMU in the May 2014 contract.  (Dkt. No. 56 ¶¶ 32, 36.)

Accordingly, Guerra and UMU oppose Karen's request to file a supplemental pleading and move to dismiss Rodriguez's third-party counterclaim on substantially similar grounds.  As to the Conuco Registrations, Guerra and UMU argue that there is no justiciable controversy.  As to the 2006 Release Agreement, Guerra and UMU argue that the claim that the Agreement was breached is time barred.  And as to Karen's copyright infringement claim, Guerra and UMU argue that it fails as a matter of law, and at the very least does not apply to compositions not listed in the 1992 Administration Agreement.  These issues will be addressed in turn.

### 1.    Conuco Registrations

Karen and Rodriguez seek a declaration that copyright registrations for Guerra compositions filed by Conuco are invalid.  Rodriguez alleges that Guerra was an officer/director of Conuco and that in applications for copyright registration, Conuco identified itself as the sole owner of the copyrights for several dozen of Guerra's compositions that were allegedly owned by Karen.  (Dkt. No. 56 ¶¶ 18-20.)  Rodriguez claims that but for these alleged misrepresentations, the U.S. Copyright Office would not have issued copyright certificates to Conuco.  (*Id.* ¶ 22)

Guerra and UMU argue that because Karen itself filed separate copyright registrations for each of those compositions, the registration requirement has been satisfied, and a declaration as to the validity of the Conuco Registrations would have no effect on the claims here.  (Dkt. No. 68 at 16-18.)  Indeed, Guerra and UMU expressly disclaim reliance on the Conuco Registrations for their infringement claims or for the purposes of demonstrating Guerra's ownership of the copyrights in the compositions.  (Dkt. No. 82 at 17.)

As a threshold matter, the jurisdictional prerequisite of copyright registration required by section 411(a) of the Copyright Act has been satisfied through Karen's registration of the same compositions that are the subject of the Conuco Registrations.  *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.").  Even though Guerra and UMU are infringement plaintiffs in this action, section 411(a) does not require them to be the ones who registered the copyright.  *See, e.g.*, *Vapac Music Publ'g, Inc. v. Tuff 'N' Rumble Mgmt.*, No. 99 Civ. 10656, 2000 WL 1006257, at *2 (S.D.N.Y. July 19, 2000) ("By its terms, 17 U.S.C. § 411(a) requires only that a copyright be registered; it does not require that the plaintiff be the party who caused the registration to occur.").  Proof of Karen's registration, which is adequately adduced here, is thus sufficient to confer jurisdiction for the infringement action.

The question, then, is whether the Conuco Registrations are relevant to the claims at issue, or instead whether a decision by the Court on this issue would amount to an impermissible advisory opinion.  Here, the compositions covered by the Conuco Registrations are the subject of an infringement action brought by UMU and Guerra.  Indeed, the ownership status of those copyrights is a central issue in this action, as "a plaintiff must establish . . . 'ownership of a valid copyright'" as an essential element of an infringement claim.  *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, Inc., 499 U.S. 340, 361 (1991)).  Moreover, copyright registration "constitutes *prima facie* evidence of the valid ownership of a copyright."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citing 17 U.S.C. § 410(c)).  Though the presumption of ownership based on registration is a rebuttable one, registration nonetheless serves as evidence of ownership.  *See Hamil Am., Inc. v. GFI Inc.*, 193 F.3d 92, 98 (2d Cir. 1999).

At this stage, the Court is obliged to accept pleaded facts as true and draw all inferences in favor of the non-moving parties, that is, Karen and Rodriguez. Doing so, the Court cannot at this stage conclude that the Conuco Registrations are not germane to the infringement claim relating to precisely the same compositions. The ownership of the copyrights in these compositions is a substantial controversy, disputed by the parties in this action, and the status of the Conuco Registrations is a real controversy bearing on this dispute. As such, the declaratory judgment sought by Karen and Rodriguez would not amount to an impermissible advisory opinion, but rather—drawing all inferences in Karen's and Rodriguez's favor—would constitute evidence relevant to the claims at issue in this action. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Thus, Rodriguez's claim is not dismissed and Karen is permitted to file a supplemental pleading adding this claim.

Rodriguez also argues that under section 411(b)(2) of the Copyright Act, the Court should refer this matter to the Register of Copyrights. (Dkt. No. 73.) Section 411(b)(2) provides that: "In any case in which inaccurate information [in a copyright registration] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2).

Section 411(b)(2) has been described as a "peculiar" and "rather unusual" provision. *See Palmer/kane LLC v. Gareth Stevens Publ'g*, No. 15 Civ. 7404, 2016 WL 6238612, at *1 (S.D.N.Y. Oct. 24, 2016) (describing section 411(b)(2) as a "rather unusual statutory

requirement"); *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348

(S.D.N.Y. 2016) ("[Section 411(b)(2)] is a peculiar one.").  However, because the jurisdictional

prerequisite has been satisfied here by Karen's registration of the relevant copyrights, as

discussed above, it is not necessary to refer this issue to the Register of Copyrights in order to

clarify the legitimacy of the Conuco Registrations for the purpose of conferring jurisdiction over

the infringement action.

In any event, although many courts have noted the mandatory nature of this referral,

courts generally agree that referral is not necessary at this early stage of litigation.  *See Rosen*

*Book Works*, 188 F. Supp. at 348 ("[C]ourts are in agreement that the provision is mandatory in

nature, requiring district courts to solicit the advice of the Copyright Office when the statutory

conditions are satisfied."); *see also Gareth Stevens*, 2016 WL 6238612, at *2 ("[C]ourts

generally agree that they may first require the party seeking invalidation to establish as a factual

matter that the applicant included inaccurate information on the registration application with

knowledge that it was inaccurate.").  The Register of Copyrights has confirmed as much: "The

Register suggests that, at a minimum, the court retains the power to delay the request until a

factual record has been developed, e.g., through affidavits or discovery."  *Gareth Stevens*, 2016

WL 6238612, at *2 (quoting Response of the Register of Copyrights to Request Pursuant to 17

U.S.C. § 411(b)(2) at 11, *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 09 Civ. 23494 (S.D. Fla. Oct.

14, 2010), Dkt. No. 209).  As such, even were referral necessary in this case, the Court would

deem Rodriguez's request to be premature.

**2.    Breach of the 2006 Release Agreement**

Karen and Rodriguez also argue that the Release Agreement is unenforceable due to

Guerra's breach of provisions of the agreement requiring him to transfer real and personal

property to Karen.  (Dkt. No. 56 ¶ 36.)  Guerra and UMU argue that this claim should be

dismissed because it is time barred.  (Dkt. No. 68 at 12.)

Here, the applicable statute of limitations for the declaratory judgment claim[3] regarding

the enforceability of the Release Agreement hinges on a choice-of-law analysis.  Guerra and

UMU argue that New York choice-of-law rules apply and require the application of New York's

six-year statute of limitations.  (Dkt. No. 68 at 12.)  *See* N.Y. C.P.L.R. § 202.  Rodriguez,[4]

meanwhile, argues that because this is an issue "concerning the ownership of copyrights,"

federal choice-of-law rules apply and require the application of Dominican Republic law, which

has a twenty-year statute of limitations for breach of contract claims.  (Dkt. No. 73 at 16; *see*

Dkt. No. 76 Ex. 3 at 9-12.)

A cardinal principle of choice-of-law analysis is that courts must consider the specific

issue at hand in determining which law to apply.  *See* Restatement (Second) of Conflict of Laws

§ 222 cmt. d (1971) ("The courts have long recognized that they are not bound to decide all

issues under the local law of a single state. . . . Each issue is to receive separate consideration if it

is one which would be resolved differently under the local law of two or more of the potentially

interested states.").  Where a party "seeks to enforce contractual rights," such rights "are

interpreted in accordance with state law in the absence of a 'distinctive national policy' to the

contrary."  *Duffey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 3d 120, 128 (S.D.N.Y.

2014) (quoting *Bartsch v. Metro–Goldwyn–Mayer, Inc.*, 391 F.2d 150, 153 (2d Cir. 1968)

---

[3]        Though Karen and Rodriguez seek a declaratory judgment, "[t]he statute of
limitations period for a declaratory judgment action is based on the underlying substantive
claims upon which it is premised."  *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 268
(S.D.N.Y. 2008).

[4]        And Karen, which incorporates by reference Rodriguez's argument on this issue.
(Dkt. No. 75 at 23.)

(Friendly, J.)).  "[T]he general interest that copyrights . . . should be enjoyed by their true owner is not enough to [require application of federal common law]."  *Id.* (alterations in original) (quoting *Bartsch*, 391 F.2d at 153).

Karen and Rodriguez's claim is for breach of contract regarding the Release Agreement. They argue that Guerra breached his contractual obligations by failing to transfer certain real and personal property as required by the Release Agreement.  (Dkt. No. 59, Ex. 1; Dkt. No. 56 ¶¶ 32, 36.)  Though the contract may also involve the transfer of rights sounding in copyright, the claim at issue is not one for copyright infringement but rather for breach of contract.  As such, this is not a case where federal choice-of-law rules should apply.  *Cf. Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90 (2d Cir. 1998) (applying federal choice-of-law rules to determine which law applies to a copyright infringement claim).  Karen and Rodriguez have pointed to no federal policy or interest that would be vitiated by the application of New York choice-of-law rules, as would be required to justify the application of federal common law in the form of federal choice-of-law rules.  *See In re Gaston & Snow*, 243 F.3d at 606 (holding in the bankruptcy context that, "[b]efore federal courts create federal common law, 'a significant conflict between some federal policy or interest and the use of state law must first be specifically shown'" (quoting *Atherton v. FDIC*, 519 U.S. 213, 218 (1997))).

Under New York law, the borrowing statute provides that a breach of contract action "based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued."  N.Y. C.P.L.R. § 202.  Thus, the breach of contract claim must be dismissed if it is asserted beyond New York's six-year statute of limitations.  *Id.* § 213 ("The following actions must be commenced within six years: . . . an action upon a contractual obligation or liability, express or implied . . . .").

The breach of contract claim at issue here, alleging Guerra's failure to transfer property as required by the 2006 Release Agreement, accrued upon the signing of the agreement. (*See* Release Agreement ¶ SIXTH (requiring Guerra to transfer the property "upon the signing [of] this agreement" in October of 2006).) *See Huang v. Siam Commercial Bank Pub. Co.*, 247 F. App'x 299, 301 (2d Cir. 2007) ("[A]s a claim for breach of contract, 'the cause of action accrues and the Statute of Limitations begins to run from the time of the breach.'" (quoting *John J. Kassner & Co. v. City of N.Y.*, 46 N.Y.2d 544, 550 (N.Y. 1979))). The breach of contract claim was not asserted until 2016, which is well beyond New York's six-year statute of limitations. As such, it is untimely.

Karen and Rodriguez argue that even if the New York borrowing statute applies, their claim is nonetheless timely, as it is saved by N.Y. C.P.L.R. § 203(d). (Dkt. No. 73 at 17-19.) Section 203(d) provides that if an otherwise untimely counterclaim "arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed." N.Y. C.P.L.R. § 203(d).

However, section 203(d) requires a "tight nexus between claim and counterclaim" to "save a counterclaim from an otherwise-applicable statute of limitations." *Estate of Mantle v. Rothgeb*, 537 F. Supp. 2d 533, 544 (S.D.N.Y. 2008) (quoting *Macaluso v. U.S. Life Ins. Co.*, No. 03 Civ. 2337, 2004 WL 1497606, at *7 (S.D.N.Y. July 2, 2004)). "In order to fall within § 203(d), 'the counterclaim must seek a recovery-back predicated on some act or fact growing out of the matter constituting the cause or ground of the action brought.'" *Id.* (quoting *First Fid. Bank N.A. v. Companhia de Navegacao Maritima Netumar*, 637 F. Supp. 1182, 1185 (S.D.N.Y. 1986)).

Karen and Rodriguez's breach of contract claim does not have a tight nexus to Guerra's and UMU's copyright claims. Guerra's and UMU's claims allege copyright infringement due to Karen's allegedly unauthorized use of Guerra's compositions starting in 2009. (Dkt. No. 31 ¶¶ 45-57.) Karen's and Rodriguez's breach of contract claim arises from Guerra's alleged failure to transfer property to Karen at the time of the Release Agreement in 2006. While both claims implicate the 2006 Release Agreement, they will involve development of different facts and relate to different time periods and different actions by the parties. This is not a sufficient nexus to justify application of section 203(d). *See Killian v. Captain Spicer's Gallery, LLC*, 140 A.D.3d 1764 (N.Y. App. Div. 4th Dep't 2016) ("[I]t is well settled that a time-barred claim may be used to set off another claim only to the extent that the two claims arise from the same incident or transaction."); *see, e.g.*, *SCM Corp. v. Fisher Park Lane Co.*, 40 N.Y.2d 788, 792 (N.Y. 1976) (holding that a claim relating to performance under a contract and a counterclaim relating to the negotiation of the contract "do not arise out of the same transactions or occurrences").

As such, Rodriguez's breach of contract claim regarding the Release Agreement is dismissed as time-barred, and Karen is not permitted to file a supplemental pleading asserting this claim.[5]

### 3.    Karen's Copyright Infringement Claim

Guerra and UMU next argue that Karen's proposed copyright infringement claim fails because the 2006 Release Agreement gave Guerra the right to administer and control the compositions, which in turn gave him the right to authorize UMU in 2014 to license the

---

[5]    As the breach-of-contract claim is time-barred, the Court need not address Guerra and UMU's argument that a viable allegation of breach does not automatically nullify the entire Release Agreement. (Dkt. No. 82 at 14-16.)

compositions on his behalf.  (Dkt. No. 68 at 10-11.)  Karen argues, on the other hand, that it retained copyright rights in the compositions even after the execution of the Release Agreement, such that Guerra's licensing of the compositions to UMU amounts to infringement.

"In a copyright infringement case, the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen*, 351 F.3d at 51. "A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright." *Id.*  And the second element of a copyright infringement claim is satisfied where a plaintiff shows "both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'" *Id.* (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)).  However, "[a] claim for infringement will fail if the challenged use of the copyrighted work is authorized by a license." *Wu v. Pearson Educ. Inc.*, No. 10 Civ. 6537, 2013 WL 145666, at *4 (S.D.N.Y. Jan. 11, 2013) (citing *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998)).

Karen has satisfied its threshold burden of stating a viable cause of action for copyright infringement.  Karen has listed the compositions at issue and provided copyright certificates attesting, at least as *prima facie* evidence, to its ownership.[6]  (Dkt. No. 59-2 to -3.)  Moreover, Karen alleges in its supplemental pleading that Guerra and UMU have infringed these copyrights by "reproduc[ing], publish[ing], and distribut[ing] the Musical Compositions" without permission from Karen.  (Dkt. No. 59-1 ¶¶ 36-40.)

---

[6]     Guerra and UMU argue that Karen's claim does not extend to 20 compositions not listed in the 1992 Administration Agreement.  (Dkt. No. 68 at 15.)  However, Karen's proposed supplemental pleading alleges that it entered into a series of agreements with Guerra and that as a result, Karen is the "worldwide exclusive owner[] of the copyright rights and exclusive rights . . . with respect to the [compositions]," carrying its burden with respect to those compositions.  (Dkt. No. 59-1 ¶¶ 13, 15.)

However, the viability of Karen's infringement claim rests on whether, as Guerra and UMU argue, the Release Agreement provided Guerra with an exclusive right to license the compositions to UMU.  *See U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991) ("[A]n exclusive licensee of any of the rights comprised in the copyright, though it is capable of breaching the contractual obligations imposed on it by the license, cannot be liable for infringing the copyright rights conveyed to it.").

A closer examination of certain provisions of the Release Agreement guides the Court's analysis on this question.  Paragraph "Fourth" of the Release Agreement describes the rights retained by Karen.  It provides that "all the recordings made under THE BASE AGREEMENT and all its derivatives, (along with the performances incorporated therein), and THE ARTIST'S worldwide rights thereto, will be the exclusive property of KAREN."  (Release Agreement ¶ FOURTH.)  That provision goes on to specify the nature of this grant in detail, providing that Karen has:

> the right to . . . sole and exclusive ownership of all the recordings done under THE BASE AGREEMENT including, but not limited to, the right to use and control all the master recording productions, masters, phonographic productions and other reproductions of the performances and songs incorporates [sic] in said recordings by any method, whether it be electronic, magnetic, digital, mechanical or other existing or future means, obtained from recordings made under THE BASE AGREEMENT and the performances incorporated therein.

(*Id.*)  This section of the Release Agreement is relied upon by Karen in asserting its claim of ownership over the disputed copyrights.

Meanwhile, Paragraph "Seventh" of the Release Agreement contemplates the ongoing relationship with regard to royalties and the rights that revert to Guerra.  It provides:

> With regard to the control and administration of the earnings to be received in royalties and public broadcasts of the compositions of THE ARTIST made under THE BASE AGREEMENT and THE

> MODIFICATIONS, KAREN will retain the rights and obligations established by the agreement between the parties, maintaining the pre-established proportion and means of collection, i.e. 70% for the ARTIST and 30% for KAREN, for a sole and irrevocable term of three (3) years, as of the signing of this agreement.  At the end of said period, the administration of the aforementioned aspects will pass to THE ARTIST with no consideration due KAREN, with the understanding that this will not affect the authorizations licenses or permissions granted to KAREN by THE ARTIST to exercise the rights provided for in section FOUR of this agreement . . . .

(*Id.* ¶ SEVENTH.)  This section of the Release Agreement is central to Guerra's claim that the Release Agreement gave him the right to license the compositions to UMU.

Considering these provisions, and the Release Agreement as a whole, leads the Court to several observations regarding the nature and scope of the Release Agreement—and to the ultimate conclusion that the Release Agreement does not unambiguously dispose of the ownership rights in the composition copyrights.

First, Paragraph Fourth refers only to Karen's rights in the "recordings" of Guerra's compositions.  Copyright ownership interests in recordings are distinct from those in the underlying compositions and can be transferred independently.  *See Ulloa v. Universal Music & Video Distribution Corp.*, 303 F. Supp. 2d 409, 412 (S.D.N.Y. 2004) ("Copyright protection extends to two distinct aspects of music: (1) the musical composition, which is itself usually composed of two distinct aspects—music and lyrics; and (2) the physical embodiment of a particular performance of the musical composition, usually in the form of a master recording." (quoting *Staggers v. Real Authentic Sound*, 77 F. Supp. 2d 57, 61 (D.D.C. 1999) (internal quotation marks omitted)); *see also* 6 Nimmer on Copyright § 30.03 (2015) ("Copyright ownership of the physical embodiment of the performance of a musical composition (*e.g.*, a master recording) is distinct from the ownership of the copyright in the musical composition

itself . . . .").  That Karen held rights in the *recordings* of the works at issue says nothing about the question of whether Karen held rights in the *compositions* at issue.

Second, Paragraph Seventh does not clearly dispose of the ownership rights in the compositions.  By its terms, it is limited to the "control and administration of the earnings to be received in royalties and public broadcasts of the compositions."  It provides that for three years following the agreement, these earnings should be split 70% for Guerra and 30% for Karen.  And then it provides that at the end of the three-year period, "the administration of the *aforementioned aspects* will pass to [Guerra] with no Consideration due [Karen]."  At this stage, without any evidence to the contrary,[7] the Court does not interpret this provision to provide for the ownership of the underlying copyrights, as "[a]n agreement concerning royalties does not constitute a 'transfer of copyright ownership' within the meaning of [the Copyright Act]."  *Big E. Entm't, Inc. v. Zomba Enters., Inc.*, 453 F. Supp. 2d 788, 798 (S.D.N.Y. 2006) (second alteration in original) (quoting  *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1160 (S.D.N.Y. 1996)), *aff'd*, 259 F. App'x 413 (2d Cir. 2008).

Thus, both Karen and Guerra/UMU are correct that these provisions of the Release Agreement do not clearly address the ownership of the copyrights in the underlying compositions that are the subject of the infringement action here.  Karen is correct that Paragraph Seventh does not unambiguously give Guerra an exclusive right to license the compositions, and Guerra/UMU is correct that Paragraph Fourth does not unambiguously give Karen that right. (Dkt. No. 75 at 16-17; Dkt. No. 82 at 6-8.)

---

[7]     Guerra and UMU lean on the report of Rodriguez's Dominican law expert (Dkt. No. 76-3) to argue that the "Release Agreement must be interpreted to effectuate the 'common intention' of the parties over the 'literal meaning of the words' (Dkt. No. 82 at 8).  Trying to divine the common intention of the parties is a task ill-suited for this stage of litigation, before the facts have been developed; this assertion instead supports a conclusion that the copyright infringement claim should survive into discovery.

Considering this together, and in light of the burden at this stage of litigation, Guerra and UMU have not shown that the Release Agreement vested them with an exclusive license such that their use of the compositions could not amount to copyright infringement.[8]  Accordingly, Karen is permitted to supplement its pleading to include its claim of copyright infringement. And Rodriguez's complaint is not dismissed to the extent that it raises issues of the scope and effect of the Release Agreement on the ownership of the copyrights in the compositions.

### B.   Karen's and Rodriguez's Motion for Judgment on the Pleadings

Karen and Rodriguez move for judgment on the pleadings as to Guerra's and UMU's counterclaim seeking a declaratory judgment that Guerra owns the copyrights in the compositions and that Karen and Rodriguez are infringing those copyrights.  (Dkt. No. 65) Karen and Rodriguez argue that Guerra's and UMU's ownership claim is barred by the applicable statute of limitations, and that their infringement claim fails as a result.  (*Id.*)

An action seeking a declaration of copyright ownership is subject to a three-year statute of limitations from when the claim accrues.  *See* 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim is accrued.").  "An ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'"  *Kwan*, 634 F.3d at 228 (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)).  A variety of events constituting "express repudiation" can trigger an ownership claim, such as "when alleged co-authors are presented with a contract identifying the defendant as the 'sole owner and copyright holder'; or when alleged co-owners learn they are entitled to royalties that they are not

---

[8]     The failure of the Release Agreement to unambiguously dispose of the ownership of the copyrights in turn implicates the status of the copyrights prior to the execution of the Release Agreement.  However, as explained below, the Court does not find at this stage that the 1992 Agreement settles the issue either.

receiving." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013) (citation omitted) (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1368 (9th Cir. 1996)). "Where . . . the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail." *Kwan*, 634 F.3d at 230.

Karen argues that it has made at least two plain and express claims of ownership of the copyrights in the Guerra Compositions, both of which occurred more than three years prior to Guerra's 2015 complaint. (Dkt. No. 65 at 7.) Karen claims that the cause of action first accrued in 1992, upon execution of the 1992 Agreement. (*Id.* at 8.) Karen next claims that the cause of action accrued in 2006, upon the execution of the Release Agreement. (*Id.* at 9.) Guerra and UMU, meanwhile, contend that Karen did not claim ownership of the Guerra Composition copyrights until 2013.[9] (Dkt. No. 77 at 6.)

Under the 1992 Agreement, Guerra assigned Karen the exclusive worldwide right to reproduce, distribute, and sell the underlying compositions. (1992 Agreement at 3.) The duration of the agreement was "for the entire time of protection granted to the authors, their successors and assigns." (*Id.*) However, the 1992 Agreement also expressly acknowledged that Guerra "in his capacity as composer and author, has absolute ownership" over the compositions (*id.* at 2), and also reserved Guerra's "moral right" over the compositions (*id.* at 3). And the 1992 Agreement limited the scope of Karen's rights by providing that "the assignment of the rights . . . does not extend to the modes or use of medium of dissemination not existing or unknown at the time of the assignment." (*Id.* at 5.)

---

[9]    Guerra and UMU also argue that Karen's copyright registrations did not put them on notice of their ownership claim. (Dkt. No. 77 at 14-16.) And Karen "does not argue in [its] motion for judgment on the pleadings, that its copyright registrations provided constructive notice of its claims to Guerra." (Dkt. No. 81 at 14 n.8.)

Drawing all inferences in Guerra's (and UMU's) favor, the Court concludes that Karen has failed to carry its burden of showing that it made an express claim of ownership in the 1992 Agreement.  The 1992 Agreement—which, in any event, covers only a subset of the compositions at issue—clearly contemplates ongoing ownership of portions of the copyright bundle of rights by Guerra, and does not amount to a complete transfer of ownership so as to amount to an "express repudiation" of Guerra's ownership rights.  *See Gary Friedrich*, 716 F.3d at 317.  Guerra's rights in the copyright are preserved, for example, as to new modes of dissemination, suggesting the possibility of co-ownership rather than a clear repudiation of Guerra's interest.  *See id.* ("[C]laims of co-ownership, as distinct from claims of infringement, accrue when plain and express repudiation of co-ownership is communicated to the claimant . . . ." (alteration in original) (quoting *Zuill*, 80 F.3d at 1369)).  Had the parties intended to fully transfer Guerra's rights through the 1992 Agreement, they could have used language indicating as much.  *See, e.g.*, *Consumer Health Info. Corp. v. Amylin Pharm., Inc.*, 819 F.3d 992, 995 (7th Cir. 2016) (finding that an ownership claim accrued upon the signing of a contract transferring "all right, title, and interest in and to" a copyright), *cert. denied*, 137 S. Ct. 447 (2016); *Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013, 1016 (10th Cir. 2013) (finding an ownership claim triggered where a contract transferred "all Intellectual Property Rights").  Because Guerra did not plainly and expressly transfer his full ownership rights to Karen through the 1992 Agreement, it did not trigger his obligation to bring an ownership claim within three years.

Similarly, Karen has not carried its burden of showing that the 2006 Release Agreement triggered Guerra's ownership claim.  For the reasons discussed above in the context of Karen's putative infringement claim, the 2006 Release Agreement does not clearly dispose of the ownership rights in the composition copyrights.  Just as Guerra was unable to marshal the

provisions of the Release Agreement to support his argument that he had an exclusive license in or ownership of the copyrights in the compositions, so too Karen is unable to show that the Release Agreement unambiguously confers Karen with ownership of the copyrights.  Thus, the Release Agreement also does not amount to a clear claim of ownership sufficient to trigger Guerra and UMU's claim.  As such, Guerra's and UMU's claim is timely and Karen's motion for judgment on the pleadings is denied.

As a final matter, Karen argues that "Guerra's and UMU's copyright infringement claim must be dismissed because it . . . flows from a time-barred declaration of ownership."  (Dkt. No. 81 at 16.)  However, because the Court denies the motion for judgment on the pleadings as to the ownership issue, it must also be denied as to the issue of infringement.

**IV.      Conclusion**

For the foregoing reasons, Karen's motion to file a supplemental pleading is GRANTED

IN PART and DENIED IN PART; Guerra and UMU's motion to dismiss is GRANTED IN

PART and DENIED IN PART; and Karen and Rodriguez's motion for judgment on the

pleadings is DENIED.

In light of this Opinion and Order, the parties' proposed schedule for proceeding with

discovery in this action (Dkt. No. 84) is hereby ADOPTED.

The parties are directed to appear for a status conference on July 14, 2017, at 11:00 a.m.

The Clerk of Court is directed to close the motions at Docket Number 58, Docket

Number 63, and Docket Number 67.

SO ORDERED.

Dated:  March 15, 2017
        New York, New York

_____
            J. PAUL OETKEN
        United States District Judge